IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | CRIMINAL NO. 04-344-1 |
| vs. | : | |
| | : | |
| | : | |
| JULIO FIGUEROA | : | |

Tucker, J.                                                                                             December____, 2006

## MEMORANDUM AND ORDER

Presently before this Court is Defendant Julio Figueroa's ("Figueroa") Motion to Suppress (Doc. 47) and Memorandum of Law (Doc. 64). For the reasons set forth below, upon consideration of Defendant's Motion to Dismiss (Doc. 47), Defendant's Memorandum of Law (Doc. 64 ), the Government's Responses thereto (Docs. 61 and 72) all supplemental letters submitted, and the suppression hearing held on February 21, 2006, this Court will deny Defendant's Motion to Suppress.

BACKGROUND

Defendant Julio Figueroa ("Figueroa") is charged with one count of conspiracy to distribute and possess with intent to distribute five (5) kilograms or more of cocaine, in violation of 21 U.S.C. § 846, one count of unlawfully maintaining a place for the manufacture of controlled substances, in violation of 21 U.S.C. § 856(a)(1), three counts of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting, in violation of 18 U.S.C. § 2. Defendant contends that the $3,083.00 seized from his person on November 5, 2003, should be suppressed because the police lacked reasonable suspicion to conduct a pat down. In

the alternative, Defendant argues that if the search was incident to the arrest, the circumstances subsequent to the arrest rendered the arrest unlawful and the $3,083.00 should be suppressed. After reviewing the Defendant's and Government's filings and based on the arguments presented at the suppression hearing, the Court finds as relevant the following facts.

## FACTUAL BACKGROUND

On November 5, 2003, at approximately 4:10 p.m., Agent Timothy Deery ("Agent Deery") of the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigation ("BNI") received information from a confidential informant ("CI") that Defendant Juilo Figuero was using the premises located at 2643 N. Mascher Street, in Philadelphia for the distribution and sale of cocaine. (Gov't's Supp. Mem. in Resp. to Def.'s M.T.S, as Amended, 1). The CI told Agent Deery that at approximately 4:10 p.m., the Defendant phoned him and asked him to come to the Mascher Street residence which indicated that Defendant expected cocaine to arrive at the location. A computerized criminal record check by Agent Deery showed that Defendant has a criminal history, including a federal conviction for distribution of cocaine. Id. at 2.

At approximately 4:14 p.m. the same day, Agent Deery began video surveillance of the residence located at 2643 N. Mascher Street. A black Nissan Maxima was parked in front of the residence. At 4:16 p.m., the CI, acting under the supervision of the BNI agents, arrived at 2643 N. Mascher Street and entered the residence. At 4:19 p.m. the CI exited the residence, and advised Agent Deery via telephone that Defendant was counting money inside and told him that he expected to receive 30-40 kilograms of cocaine the same day. At 4:39 p.m., after consultation with Agent Deery, the CI phoned Defendant and told him that he was coming back with $3,000.00 to buy a 1/4 pound of cocaine. Id. at 2-3.

At 4:41 p.m. Corey Lablount ("Lablount") arrived in front of the residence in a brown Impala. At 4:42 p.m., Defendant exited the residence and got into the passenger seat of the Impala. At 4:53 p.m., Defendant and Lablount exited the Impala and Lablount was carrying a blue plastic bag in his left hand. Defendant stopped at the trunk of the Maxima before entering the residence and obtained a bag from the trunk. Id.

At 5:17 p.m., the CI arrived and entered the residence then exited the residence at 5:19 p.m. The CI was given $3,000.00 in pre-recorded buy money to make the purchase of the 1/4 pound of cocaine. At 5:18 p.m., the CI entered the residence but exited a few minutes later and told Agent Deery that the Defendant told him to come back in an hour because he was getting money ready for his "guy" to show up. The CI advised agents that he saw Defendant counting a large amount of money. Id. at 3-4.

At 7:20 p.m., the CI entered the residence with the $3,000.00 in pre-recorded buy money. At 7:25 p.m., the CI exited the residence, left the area and was followed several blocks by BNI agents. The CI gave Agent Deery one clear plastic bag containing a white power and chunks, alleged cocaine, with a weight of approximately 1/4 pound. Id. at 6.

At 7:54 p.m., Anthony Correa ("Correa") arrived and entered 2643 N. Mascher Street. At 8:24 p.m. Correa exited the residence carrying a small black plastic bag and drove away. Correa was followed and Philadelphia Police uniformed officers attempted to stop Correa. Correa attempted to flee but was stopped a short distance later. As agents approached Correa's car, they observed an open black bag on the front seat with seven clear plastic bags containing approximately 875 grams of cocaine. Id. at 7.

At 8:45 p.m., Figueroa and Anthony Castro ("Castro") exited the residence and got into

3

the black Maxima.  Agents followed Figueroa and Castro to a Mobil station located at 2nd Street and Lehigh Avenue, in Philadelphia.  While Figueroa was outside of his vehicle, agents stopped him and conducted a pat down which revealed that Figueroa was carrying $3,083.00 in his pants pocket.  Figueroa was arrested.  Approximately, half an hour later, Figueroa voluntarily gave agents a signed consent to search the Maxima.  Confiscated from the trunk of the Maxima were three brick-shaped packages each containing approximately 1,000 grams of alleged cocaine and $25, 089.00 in United States currency. Id. at 7-8.

## DISCUSSION

Defendant has moved to suppress the $3,083.00 seized from his person on November 5, 2003.[1]  (Def.'s Mem. of Law, 1.)  Defendant contends that the physical evidence should be suppressed because the police officers lacked reasonable suspicion to conduct a Terry stop and frisk.  In its response, the Government asserts that the search was valid because the officers in question not only had reasonable suspicion to stop and frisk Defendant, but they had probable cause for a warrantless arrest which entitled them to search Defendant.  (Gov't's Supp. Mem., 8-11).  This Court finds that the police had probable cause to arrest Figueroa and as such they were entitled to search him incident to his arrest.  Thus, it is unnecessary to address whether the police had reasonable suspicion, a lower burden of proof, to conduct a Terry stop and frisk.

A law enforcement officer has probable cause to arrest a subject when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be

---

[1] In his Memorandum of Law (Doc. 64), Defendant withdrew all other claims in his previously filed Motion to Suppress (Doc. 47).

arrested." Estate of Smith v. Maraso, 318 F.3d 497, 514 (3d Cir. 2003). In the instant case, the police approached Defendant only after they corroborated the CI's report that Defendant was selling cocaine from the residence of 2643 N. Mascher Street. Specifically, on November 5, 2003, at approximately 4:14 p.m., the police set up surveillance outside the residence and observed a stream of people going into and out of the residence. At 7:20 p.m., the same day, the CI made a controlled buy of 1/4 pound of cocaine from Defendant with $3,000.00 of pre-recorded buy money. In addition, the police recovered cocaine from Correa after he left 2643 N. Mascher Street. Based on the totality of the circumstances, the officer's knowledge at the time they arrested the Defendant was sufficient to warrant a reasonable person to believe that an offense had been committed by the Defendant. See e.g. United States v. Butler, No. 99-536-01, 2000 U.S. Dist. LEXIS 129, at * 5 (E.D. Pa., Jan. 7, 2000) (probable cause established where an informant alleged that drugs were being sold in defendant's residence and made a controlled buy from that residence), United States v. Dixon, 123 F. Supp. 2d 278 (E.D. Pa., Dec. 12, 2000) (the report of drug sales combined with a confidential informant's controlled buy provided a basis for probable cause).

Inasmuch as the police had probable cause to arrest Figueroa, they were entitled to search him incident to his arrest. "In the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." United States v. Robinson, 414 U.S. 218, 235 (1973). Further, as long as probable cause to arrest existed at the time of the arrest, it is immaterial whether an officer conducts his search before or after arresting the suspect. See e.g. Rawlings v. Kentucky, 448 U.S. 98, 111 (1980) (where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, it is not particularly important that the search preceded the arrest). Accordingly,

it is clear that the officers were entitled to search Figueroa incident to his arrest.

Next, this Court will address Defendant's alternative argument. Specifically, Defendant asserts that the $3,083.00 should be suppressed because the events subsequent to his arrest rendered the arrest unlawful. Defendant asserts that he was not given a timely hearing to determine probable cause after his arrest, as required by the Supreme Court in Gerstein v. Pugh, 420 U.S. 103 (1975). In Gerstein, the Supreme Court declared that the state "must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." Id. at 125. Subsequently, in County of Riverside v. McLaughlim, 500 U.S. 44 (1991), the Supreme Court held that jurisdictions providing a probable cause determination within 48 hours of arrest are immune from constitutional challenges of undue delay. Id. at 56.

In its Response, the Government asserts that Defendant had a preliminary arraignment on November 8, 2003, which satisfied the constitutional requirement set forth in Gerstein. (Gov't's Supp. Mem., 13-14). In a response letter to the Court dated October 23, 2006, Defendant asserted that although he had a preliminary arraignment, his Fourth Amendment rights were violated because his preliminary arraignment was on November 8, 2003, 72 hours after his arrest. Defendant contends that the $3,083.00, should be suppressed to remedy the violation. To support this assertion, defendant relies on United States v. Davis, 174 F.3d 941 (8th Cir. 1999).

In Davis, the Defendant was arrested for making a false police report involving the illegal trafficking of firearms. Id. at 943. Two hours after her arrest, she was interviewed by detectives and confessed to helping her boyfriend illegally traffic firearms. Thereafter, Davis agreed to cooperate with the police and was released without being charged. Id. Davis was never presented

to a magistrate for a determination of whether there was probable cause for her warrantless arrest. Nine months later, on February 19, 1998, a grand jury returned an indictment alleging Davis had made false statements to acquire firearms. Davis moved to suppress her confession. The magistrate judge recommended that the statement be suppressed because Davis was not provided with a prompt judicial determination of probable cause following her arrest. The district court adopted the magistrate judge's recommendation and the Eighth Circuit affirmed. Id. at 943-947. However, the Eighth Circuit declined to decide whether suppression is necessarily the appropriate remedy for a Gerstein/Riverside violation. Id.

The instant case is distinguishable from United States v. Davis, 174 F.3d 941 (8 Cir. 1999). In the instant case, Defendant was arrested on November 5, 2003, at approximately 9:17 p.m. Defendant's preliminary arraignment was on November 8, 2003. Assuming *arguendo*, that Defendant's arraignment occurred at 11:00 p.m. on November 8, 2003, the lapse in time between his arrest and arraignment would be 50 hours. Davis on the other hand, was never presented to a magistrate for a determination of whether there was probable cause for her warrantless arrest. Based on these facts, this Court will not suppress the $3,083.00 found on Defendant's person on November 5, 2003. Accordingly, Defendant's motion to suppress is denied.

## CONCLUSION

Based on the foregoing reasons, the Court will deny the Defendant's Motion to Suppress. An appropriate order follows.